IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 12-cv-3961 |
| v. | : | |
| URBAN OUTFITTERS, et al. | : | |
| Defendants | : | |
| | : | |
| URBAN OUTFITTERS et al. | : | |
| Third-Party Plaintiffs | : | |
| v. | : | |
| ONEBEACON AMERICA INSURANCE COMPANY, | : | |
| Third-Party Defendant. | : | |

O'NEILL, J.                                            AUGUST 19, 2013

## MEMORANDUM

Now before me are: plaintiff The Hanover Insurance Company's motion for judgment on the pleadings (Dkt. No. 26), defendant and third-party plaintiff Urban Outfitters's response (Dkt. No. 29), third-party defendant One Beacon America Insurance Company's response (Dkt. No. 30), Hanover's reply brief (Dkt. No. 32), and Urban Outfitters's surreply (Dkt. No. 33). For the following reasons I will grant the motion.

## BACKGROUND

**I.**       **The Underlying Action**

This suit stems from claims brought in the United States District Court of the District of New Mexico by the Navajo Nation against Urban Outfitters and its wholly-owned and controlled subsidiaries, entities, and retail brands (collectively "Urban Outfitters") for trademark infringement, trademark dilution, unfair competition, false advertising, commercial practices laws violations, and for violation of the Indian Arts and Crafts Act.  See Dkt. No. 30 Ex. 1 (Amended Complaint) ¶ 1.[1]  The Navajo Nation allege they suffered, inter alia, "advertising injuries arising out of Urban Outfitters's misappropriation of the Navajo Nation's advertising ideas and styles of doing business" that include "advertising injuries and web-site injuries arising out of [Urban Outfitters's] infringement of title by falsely suggesting and misrepresenting that its products are Indian made, when they were not," advertising injuries arising out of disparagement of the Navajo Nation's products, advertising injuries arising out of [Urban Outfitters's] use of the Navajo Nations' advertising ideas, and advertising injuries and web-site injuries arising out of [Urban Outfitters's] infringing upon the Navajo Nation's identity, culture, and cache associated with being a producer of authentic Indian products.  Am. Compl. ¶¶ 115-119.  "The amended complaint alleges that the defendants' advertising materials were improper either because (1) they used the "Navajo" or "Navaho" names, or (2) they falsely represented through the use of Indian identifiers, styles, designs, tribal patterns, or motifs that the products advertised were of genuine Indian or Native American origin."  Dkt. No. 32 p. 2.  Hanover argues that these "common themes constitute the substance of all of the offending publications at issue in the underlying litigation, and provide the factual basis for all of the Navajo Nation's claims against the insureds."  Id.

---

[1] All references to the "Amended Complaint" refer to the Amended Complaint in the underlying action proceeding in New Mexico.  See No. 12-195 (D.N.M), Dkt. No. 30, Amended Complaint.

### i. Allegations with Respect to the Use of the Navajo Name

The amended complaint alleges that "[s]ince at least March 16, 2009, Urban Outfitters has advertised, promoted, and sold its goods under the 'Navaho' and 'Navajo' names and marks. Urban Outfitters offers these goods on the Internet and in stores across the United States, and they compete directly with the Navajo Nation's goods."  Am. Compl. at ¶ 2.  The amended complaint further asserts that "at least as early as March 16, 2009, Urban Outfitters started using the 'Navajo' and 'Navaho' names in its product line, or in connection with the sale of its goods, online, in its catalogs, and in its physical stores."  Id. at ¶ 37.  "Urban Outfitters's use has included, and includes (but is not limited to): clothing, jewelry, footwear, handbags, caps, scarves, gloves, undergarments, and flasks."  Id.  "These items sold under the 'Navajo' and 'Navaho' names and marks evoke the Navajo Nation's tribal patterns, including geometric prints and designs fashioned to mimic and resemble Navajo Indian-made patterned clothing, jewelry and accessories."  Id.  The Amended complaint further alleges that Urban Outfitters has sold and is selling over 20 products using the "Navajo" and "Navaho" trademarks in its retail stores, its catalogs and its online stores.  Id.; see also, id. at ¶ 41.  Plaintiff attaches copies of screenshots from online shopping websites, which are an "illustrative and not exhaustive" list of the more than 20 items comprising the "Navajo Collection" sold at Urban Outfitters, as exhibits to the amended complaint.  Id.  Plaintiff asserts that Urban Outfitters, however, also sold its goods in physical stores and in catalogs, and "this has also infringed on the Navajo Nation's marks."  Id.; see also id. at ¶ 77.

### ii. Allegations with Respect to the Use of Indian Identifiers

Plaintiff also alleges that "Urban Outfitters's display and sale of its goods in its stores and on the Internet in manners that falsely suggest they are the product of the Navajo Nation, a

3

Navajo arts and crafts organization, an Indian Tribe, an Indian arts and crafts organization, or an Indian artisan." Id. at ¶ 7. This effectively misrepresents "that such goods are Indian-produced or the product of an Indian Tribe, American Indian arts and crafts organization, or Indian artisan violates the Indian Arts and Crafts Act." Id. Further, "Urban Outfitters' sale of its retail goods under the "Native American," "Indian," "Tribal," or the name of a particular Indian Tribe, such as Navajo, falsely suggests [Urban Outfitters's] products are Indian products of the Navajo Nation, an Indian Tribe, an Indian arts and crafts association, or an Indian artisan, when in-fact [Urban Outfitters's] products are not." Id. at ¶ 76. Additionally, "since March 16, 2009, and possibly earlier as discovery will confirm, and continuously thereafter to the present date, [Urban Outfitters] has advertised, marketed, offered, displayed for sale, and sold goods in manners that falsely suggested they are Indian-made, an Indian product, a product of an Indian Tribe, or the product of an Indian arts and crafts organization . . . including Indian products . . . in a traditional Indian style, printed design, or medium." Id. at ¶ 78.

A. **The Insurance Policies**

One Beacon, third party defendant in this action, issued a "fronting policy" to Urban Outfitters providing both commercial general liability and umbrella liability coverage for a policy period extending from July 7, 2010 to July 7, 2011 for which Hanover is the responsible insurer pursuant to an agreement between those two companies. Dkt. No. 1 ¶ 10. Hanover thereafter issued separate commercial general liability and commercial umbrella policies to Urban Outfitters for the subsequent policy period of July 7, 2011 to July 7, 2012. Id. at ¶ 11. The insurance policies stated that coverage was afforded only for a covered "personal and advertising injury" offense that is committed "during the policy period." Id. at ¶ 13.

"Personal and advertising injury" is defined in both policies as injury arising out of one or more of the following offenses:

> • Oral or written publication, in any manner, of material . . . that disparages a person's or organization's goods, products or services. This does not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws;
> • Oral or written publication, in any manner, of material that violates a person's right of privacy;
> • The use of another's advertising idea in your "advertisement;" or
> • Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Dkt. No. 26-2 p. 94[2]; Dkt. No. 26-4 p. 43, 59; 26-7 p. 25.

Both the Commercial General Liability and the Commercial Umbrella Liability policies also contained "prior publication" or "first publication" exclusions, "the intended effect of which is to bar coverage with respect to claimed 'personal and advertising injury' in situations such as this, in which the same or substantially similar publications began prior to the insurer's policy period and continued thereafter . . . ." Dkt. No. 1 ¶ 14. Specifically, the Commercial General Liability Coverage Form to the One Beacon/Hanover "fronting policy" with an inception date of July 7, 2010 contained the following exclusion, stating that the insurance does not apply to: "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose

---

[2] Under the policies, advertisement is defined as:

> a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. Notices that are published include material placed on the Internet or on similar electronic means of communications; and regarding websites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers is considered an advertisement.

Dkt. No. 26-7 p. 13; Dkt. No. 26-4 p. 57.

first publication took place before the beginning of the policy period." Id. at ¶ 15. The Commercial Umbrella Liability Coverage Form for that same policy similarly stated that the insurance does not apply to "personal and advertising injury" "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Id. at ¶ 16. The subsequent policies issued by Hanover directly to Urban Outfitters contained the same exclusions. Id. at ¶¶ 17-18.

Hanover asserts that

> [b]ecause the offending publications . . . allegedly began by at least March 2009, prior to the July 10, 2010 inception date of the One Beacon/Hanover 'fronting policy' and thus also prior to the July 10, 2011 inception date of the Hanover policies which followed, Hanover has no potential duty to indemnify, and thus no duty to defend [Urban Outfitters] in the underlying suit.

Id. at ¶ 19. Hanover, however, has been defending Urban Outfitters in the underlying action under the "personal and advertising injury" provisions of its insurance policies, subject to a reservation of rights. Id. Hanover filed this action seeking a declaratory judgment stating that Hanover has no potential duty to indemnify, and therefore, no duty to defend Urban Outfitters in connection with the underlying suit. Id. at ECF p. 5. Hanover now moves for judgment on the pleadings. Dkt. No. 26.

**LEGAL STANDARD**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Under Rule 12(c), judgment will not be

6

granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. Caserta v. GEICO Gen. Ins. Co., 507 F. App'x 104, 105 (3d Cir. 2012). In deciding a motion for judgment on the pleadings, I "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

## DISCUSSION

"Under Pennsylvania law, which the parties agree is applicable here, the interpretation of an insurance contract regarding the existence of coverage is generally performed by the court." Transp. Ins. Co. v. Pa. Mfr.'s Ass'n Ins. Co., 346 F. App'x 862, 865 (3d Cir. 2009) (citation omitted); see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 908 A.2d 888, 897 (Pa. 2006) ("The interpretation of an insurance policy is a question of law . . . ."). "[The] inquiry is [straightforward]." Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009). The first step "is to determine the scope of the policy's coverage . . . and the keystone of that determination is the plain language of the policy." Transp. Ins. Co., 346 F. App'x at 865, citing Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) and Nationwide, 562 F.3d at 595. "When the language of the policy is clear and unambiguous, [I] must give effect to that language." Id., citing Kvaerner, 908 A.2d at 897 (internal quotation marks and citation omitted). "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract['s] prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls the coverage.'" Id., quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (further citations omitted); see also Madison Const. Co. v. Harleysville Mut. Ins.

7

Co., 735 A.2d 100, 106 (Pa. 1999) ("We will not . . . distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."). If an insurance contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 321 (3d Cir. 2011).

After determining the scope of coverage, I must "examine the complaint in the underlying action to ascertain if it triggers coverage," Transp. Ins. Co., 346 F. App'x at 865, quoting Allen, 692 A.2d at 1095, because an insurer's "duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the [underlying] complaint triggers coverage." Id., citing Baumhammers, 938 A.2d at 290 (internal quotation marks and citation omitted). "[My] focus, in particular, is on the factual allegations contained in the [underlying] complaint which are to be taken as true and liberally construed in favor of the insured." Id. (internal quotation marks and citations omitted).

### A.      Scope of Coverage

The underlying amended complaint clearly alleges "personal and advertising injury" to which the insurance here applies. As defined in the policies, "personal and advertising injury" is an injury arising out of "[o]ral or written publication of material that . . . disparages a person's or organization's goods, products or services," and includes the "use of another's advertising idea in your 'advertisement,'" or "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Dkt. No. 26-2 p. 94; Dkt. No. 26-4 p. 43, 59; 26-7 p. 25. The underlying complaint alleges, inter alia, advertising injuries to the Navajo Nation arising out of Urban Outfitters's': (1) infringing upon the Navajo Nation's identity, culture, and cache associated with being a producer of authentic Indian products; (2) disparagement of the Navajo Nation's products; and (3) use of the Navajo Nations' advertising ideas. Am. Compl. ¶¶ 115-119.

Hanover seeks a declaration that it has no potential duty to indemnify and no duty to defend Urban Outfitters in the underlying suit because the publications giving rise to the underlying suit began before the inception of the Hanover insurance policies. Dkt. No. 1 at ECF p. 5. Thus, Hanover's claim to declaratory relief rises or falls based on whether or not the relevant exclusion, namely the prior publication exclusion, applies to the advertising injury alleged in the underlying action.

   B.      Prior Publication Exclusion

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage . . . the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." Transp. Ins. Co., 346 F. App'x at 866, citing Madison Constr., 735 A.2d at 106. The focus of Hanover's argument is that the "prior publication" exclusion precludes coverage for any injury "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Dkt. No. 1. ¶¶ 14-18. "Under the exclusion's plain terms the 'first publication' date is a landmark: if the injurious advertisement was 'first published' before the policy coverage began, then coverage for the 'advertising injury' is excluded." Transp. Ins. Co., 346 F. App'x at 866, citing Applied Bolting Tech. Prods. v. U.S. Fid. & Guar. Co., 942 F. Supp. 1029, 1036 (E.D. Pa. 1996).[3]

Here, the inception date of the One Beacon/Hanover "fronting policy" for which Hanover was the responsible insurer was July 7, 2010. Dkt. No. 1. ¶ 10. Thereafter, Hanover issued

---

[3] The clause at issue in this case is identical to the clause the Court of Appeals considered and found unambiguous in Transportation Insurance. Compare Transp. Ins. Co., 346 F. App'x at 866-67 with Am. Compl. ¶¶ 15-18. I reach the same conclusion. There, as here, the underlying complaint "allege[d] a prior use of the trademark that pre-dated the insurer's policy period" and that subsequent infringing "publications were consistently injurious." Transp. Ins. Co., 346 F. App'x at 867. Given those facts, the same exclusion is unambiguous here: Hanover's "insurance does not apply to . . . '[p]ersonal and advertising injury' . . . [a]rising out of oral or written publication of material whose first publication took place before [July 7, 2010]." Id.

subsequent policies which were substantially the same and covered the ensuing year. Id. at ¶¶ 11-18. The amended complaint in the underlying action alleges, however, that at least since March 16, 2009, Urban Outfitters started using the "Navajo" and "Navaho" names in its product line, or in connection with the sale of its retail clothing goods and accessories, online, in its catalogs, and in its physical stores. Am. Compl. ¶¶ 37. The term Navajo is trademarked by the Navajo nation, and the use of that trademark, or the confusingly similar term "Navaho," allegedly falsely suggests Urban Outfitters products are Indian products of the Navajo Nation, an Indian Tribe, an Indian arts and crafts association, or an Indian artisan, when in fact, they are not. Id. at ¶¶ 41, 78. The underlying amended complaint further alleges that Urban Outfitters's behavior caused various forms of advertising injuries. Id. at ¶¶ 115-119. Thus, taking the allegations in the underlying amended complaint as true, I find that it is clear that the advertising injuries are alleged to have begun prior to the policy inception date and thus are excluded from coverage.

I find it immaterial whether Urban Outfitters advertised various allegedly injurious retail clothing or accessory products prior to the policy inception date as well as other, additional, different retail clothing or accessory products after the publication date because, as the Court of Appeals held in Transportation Insurance, "under the 'prior publication' exclusion, '[i]t is irrelevant that later publications, made after the policy became effective, also caused 'advertising injury' or increased the damages.'" Transp. Ins. Co., 346 F. App'x at 867, quoting Applied Bolting, 942 F. Supp. at 1036. "Unless later publications contained 'new matter'—i.e. substantively different content—that the [underlying] complaint 'allege[d] [were] fresh wrongs,' the 'prior publication' exclusion applies." Id., quoting Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1074 (7th Cir. 2004). Here, the alleged advertising injury is identical irrespective of

the product being advertised.  Other products that allegedly violate the Navajo Nation's trademark on the word "Navajo" by using that term, the similar term "Navaho," or other terms such as "Native American," "Indian," or "Tribal, see Am. Compl. ¶¶ 54 and 76, may cause separate injuries, but they infringe upon the same trademarked word and thus cause advertising injuries to the Navajo Nation in the same way.[4]  Because all the claims in the underlying action allege various injuries stemming from advertisements published prior to the policy inception date, those injuries are subject to the prior publication exclusion.  See Am. Compl. ¶¶ 81-133.  Accordingly, the "exclusion in the policy prevents [Hanover] from having to defend or indemnify" Urban Outfitters against the underlying action.  Transp. Ins. Co., 346 F. App'x at

---

[4] In other words, suppose Urban Outfitters only made one sort of product: hats.  If Urban Outfitters were to advertise one of its hats as being "Navajo," and this advertisement and any alleged advertising injury stemming from it occurred before the policy inception date, it is clear that such would be excluded from coverage under the prior publication exception.  If, after the policy inception date, Urban Outfitters was to advertise another, different hat, also as "Navajo," this too would be excluded from coverage by the prior publication exception because, though it is a different infringing product perhaps causing a discrete advertising injury, the second product infringes in an identical way to the first product.  As the Court noted in Taco Bell, which Urban Outfitters and One Beacon heavily rely upon in their respective oppositions to Hanover's motion, in such a situation:

> [t]he "prior publication" exclusion would bar coverage because the wrongful behavior had begun prior to the effective date of the insurance policy.  The purpose of insurance is to spread risk—such as the risk that an advertising campaign might be deemed tortious—and if the risk has already materialized, what is there to insure?  The risk has become a certainty.

Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1072-73 (7th Cir. 2004) (internal citations omitted); see also Applied Bolting, 942 F. Supp. at 1036-37, aff'd, 118 F.3d 1574 (3d Cir. 1997) (considering an identical clause and applying Vermont law, the Court stated "[i]t is irrelevant that the injurious publication caused a variety of different injuries before and during the coverage period. . . . Whether [the plaintiff in the underlying litigation] suffers a different type of injury following each publication of [the defendant in the underlying litigation's] advertisement is irrelevant under the plain terms of the exclusion, and [the defendant] cannot seek coverage for injuries . . . suffered during the policy period when it concedes that the offending advertisement was 'first published' prior to the date coverage began.")

867, citing Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 746 (Pa. 1999); see also Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 76 (3d Cir. 1985) ("Pennsylvania courts have held that an insurer is under no obligation to defend when the suit against its insured is based on a cause of action excluded from the policy's coverage.").[5] Thus I will grant Hanover's request for a declaration that Hanover has no potential duty to indemnify, and therefore, no duty to defend the Urban Outfitters defendants in connection with the underlying suit.

    An appropriate Order follows.

---

[5] "An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions." Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996), citing Harleysville Mut. Ins. Co. v. Madison, 609 A.2d 564, 566-67 (Pa. Super. Ct. 1992) "An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may 'potentially' come within the insurance coverage." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999), citing Claypoole, 673 A.2d at 355. "[I]f a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., Inc., 193 F.3d at 746, citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (1987). "It follows that there may be a duty to defend without a duty to indemnify." Frog, Switch & Mfg. Co., Inc., 193 F.3d at 746 (citations omitted). In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. Id., citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992). Here I find that the claims in the underlying complaint, which assert various violations of the Lanham Act, the Indian Arts and Crafts Act, the New Mexico Unfair Practices Act and the New Mexico Trademark Act, allege that Urban Outfitters's conduct giving rise to the claim began prior to the policy inception date. See Am. Compl. ¶¶ 2, 37, 41, 78. Thus I find that none give rise to a duty to defend.